❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case |
| IN THE MATTER OF THE SEARCH OF INFORMATION ) | No.23-874M(NJ) |
| ASSOCIATED WITH A CELLULAR PHONE NUMBER THAT ) | |
| ARE HELD AND STORED AT PREMISES CONTROLLED BY ) | |
| T-MOBILE ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 4/20/2023_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.     xx❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Nancy Joseph_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:4/6/2023 @4:45p.m._____

City and state:   Milwaukee, WI_____

*Judge's signature*

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

1.  The cellular telephone(s) assigned call number **262-734-4812, (**the "TARGET NUMBER"), whose wireless service provider is T-Mobile, a company headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.  This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that the TARGET are present.

3.  Records and information associated with the TARGET NUMBER that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone(s) and/or device(s) if it is subsequently assigned a different call number.

**ATTACHMENT B**

**ITEMS TO BE SEIZED AND SEARCHED**

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of T-Mobile, including any information that has been deleted but is still available to T-Mobile or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), T-Mobile is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following information about the customers or subscribers associated with the TARGET NUMBER for the time period of January 1, 2021 to the the present:

    i. Names (including subscriber names, user names, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the TARGET NUMBER, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

b. All information about the location (historical) of the TARGET NUMBER described in Attachment A from January 1, 2021 to the present. "Information about the location (historical) of the TARGET NUMBER" includes all available E-911 and/or Phase II data, GPS data, latitude-longitude data, per-call measurement data (PCMD), and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. This information would also include SMS, and data transmission, and access through any means reasonably available to all location based services with respect to the Target Phone which includes but is not limited to, enhanced 911, RTT / Per Call Measurement Data (PCMD) /

2

NELOS / LOCDBOR / TrueCall or Timing Advance reports for the duration of the order, and a listing of all cell sites and control channels and the physical address of each cell site for the areas in which the Target Phone is operating.

c. All information about the location (prospective) of the TARGET NUMBER described in Attachment A for a period of sixty (60) days, during all times of day and night. "Information about the location (prospective) of the TARGET NUMBER" includes all available E-911 and/or Phase II data, GPS data, latitude-longitude data, per-call measurement data (PCMD), and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

d. All call information obtained from a pen trap and trace device to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cellular phones described in Attachment A. Pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for 60 days from the date of this warrant. This includes: Information associated with each communication to and from the TARGET NUMBER for a period of 60 days from the date of this warrant, including:

   i. Cell site (i.e., tower and face data) for surveillance data;

   ii. The date, time, and duration of the communication;

3

iii. IP addresses associated with the cell phone device or devices used to send or receive electronic communication;

iv. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the TARGET NUMBER described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

v. IP addresses of any websites or other servers to which the TARGET NUMBER connected;

vi. Source and destination telephone numbers and email addresses;

vii. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the devices using the TARGET NUMBER on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

4

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that will assist in locating WILLIAMS, who is being investigated for violating Title 18, United States Code, Section 924(a)(1)(A).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

This warrant authorizes the law enforcement personnel described above to determine the location of the cellular device(s) described in Attachment A by collecting and examining:

1. Radio signals emitted by the target cellular device(s) for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. Radio signals emitted by the target cellular device(s) in response to radio signals sent to the cellular device by the officers;

for a period of sixty (60) days, during all times of day and night.

5

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

6

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>IN THE MATTER OF THE SEARCH OF INFORMATION<br>ASSOCIATED WITH A CELLULAR PHONE NUMBER THAT ARE<br>HELD AND STORED AT PREMISES CONTROLLED BY T-MOBILE | )<br>)<br>)<br>)<br>)<br>)    Case<br>No.23-874M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❑ contraband, fruits of crime, or other items illegally possessed;
- ❑ property designed for use, intended for use, or used in committing a crime;
- ❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 924(a)(1)(A) | false or fictitious statements to a federally licensed firearm dealer |

The application is based on these facts:

See Attached Affidavit

- ❑ Continued on the attached sheet.
- ❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

CRAIG FRIES    Digitally signed by CRAIG FRIES
Date: 2023.04.05 10:45:49 -05'00'

*Applicant's signature*

ATF Special Agent Craig Fries

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ Telephone _____ *(specify reliable electronic means)*.

Date:4/6/2023

*Judge's signature*

City and state:  Milwaukee, WI      Hon. Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Craig Fries, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives and have been since 2014. In this capacity, I have received training and have personal experience in conducting investigations related to alleged violations of federal firearms laws, including Title 18, United States Code, Sections 922 and 924.

2.      I make this affidavit in support of an application for a search warrant for information associated with the cellular device assigned with call number 262-734-4812 (the "TARGET NUMBER"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. As a provider of wireless communications service, T-Mobile is a provider of electronic communications service, as defined in 18 U.S.C. § 2510(15).

3.      I am investigating the activities of Jarvis WILLIAMS for violations of Title 18, United States Code, Sections 924(a)(1)(A), false or fictitious statements to a federally licensed firearm dealer. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. §§ 2703(c)(1)(A) to require T-Mobile to disclose to the government the information further described in Section I of Attachment B. Government-authorized persons will review the information to locate items described in Section II of Attachment B.

4.	Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1). Pursuant to 18 U.S.C. § 3123(a), the attorney for the government certifies that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation.

5.	Since this Affidavit is being submitted for the limited purpose of securing a search warrant to effecure an arrest, I have not included each and every fact known to me concerning this investigation. Based on the facts set forth in this affidavit, there is probable cause to believe that WILLIAMS has violated Title 18, United States Code, Sections 924(a)(1)(a), false or fictitious statements to a federally licensed firearm dealer. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting WILLIAMS, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## JURISDICTION

6.	This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Cellular Device is currently believed to be located inside this district based on the probable cause provided

2

herein. Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the district provided the device is within the district when the warrant is issued.

## **PROBABLE CAUSE**

7.      Records obtained from various Federal Firearms Licensees ("FFLs") reflect that between May 8, 2020, and January 21, 2023, WILLIAMS purchased a total of seventeen firearms at various FFLs in Southeastern Wisconsin. Four of those firearms were later recovered by law enforcement in both Wisconsin and Illinois. Thus, it is believed that WILLIAMS purchased the firearms in order to transport them to Illinois and/or resell them to others.

8.      FFL records reflect that on May 8, 2020, WILLIAMS purchased a handgun from an FFL. The firearm was subsequently recovered by the Chicago Police Department on May 29, 2022 during a weapons investigation.

9.      FFL records reflect that on July 22, 2021, WILLIAMS purchased a handgun from an FFL. The firearm was subsequently recovered by the Milwaukee Police Department on December 7, 2021 during a homicide investigation.

10.      FFL records reflect that on May 12, 2022, WILLIAMS purchased a handgun from an FFL. The firearm was subsequently recovered by the Illinois State Police during the execution of a search warrant on February 22, 2023.

3

11.     FFL records reflect that on May 31, 2022, WILLIAMS purchased a handgun from an FFL. The firearm was subsequently recovered by the Racine Police Department on January 6, 2023 during an armed carjacking investigation.

12.     FFL records reflect that on all ATF Form 4473s filled out by WILLIAMS between May 8, 2020 through January 31, 2023 to obtain firearms the address of "1428 Michigan Ave, South Milwaukee, Wisconsin 53172" was used by WILLIAMS.

13.     According to Wisconsin Department of Motor Vehicle records on December 1, 2020, WILLIAMS changed the address on his drivers license to 4808e W. Lloyd Street, Milwaukee, Wisconsin 53208.

14.     On or about March 25, 2023, law enforcement went to 4808 W. Lloyd Street, Milwaukee, Wisconsin to determine if WILLIAMS did in fact live there.  Law enforcement was unable to confirm this and various pieces of mail with various names on them was present, none of which were addressed to Jarvis WILLIAMS.  Law enforcement has been unable to make contact with the building owner and/or rental company.

15.     During witness interviews conducted by law enforcement it was determined that WILLIAMS had been evicted from 1428 Michigan Avenue, South Milwaukee, Wisconsin in September/October 2020.

16.     According to public court documents through Wisconsin Consolidates Court Automation Programs (CCAP), WILLIAMS was formally evicted from 1428 Michigan Avenue, South Milwaukee, Wisconsin in October 2020.

4

17.     FFL records reflect that WILLIAMS provided the numbers associated with **Subject Phone 1** at the time that he purchased firearms. FFL records reflect that WILLIAMS has provided an FFL with the number associated with **Subject Phone 1** in connection with the purchase of a firearm as recently as January 31, 2023.

18.     On or about March 31, 2023, ATF was notified by the by National Instant Criminal Background Check System (NICS) monitoring program that WILLIAMSpurchased a Taurus, model G3C firearm bearing serial number 1KA47698.  WILLIAMS provided ATF with an address of "1428 Michigan Ave, South Milwaukee, Wisconsin 53172" on the ATF Form 4473.  Furthermore, WILLIAMS provide the telephone number of 414-253-8675 on the ATF Form 4473.

19.     On April 4, 2023, law enforcement attempted to place a call to 414-253-8675 in an attempt to speak with WILLIAMS.  WILLIAMS identifiefied himself then hung up the phone. 414-253-8675 has been identified as a voice over internet protical provider (VOIP).  VOIP are commonly used to disguise your true identity via phone service.

20.     Based on my training, knowledge, and experience in firearm trafficking schemes and/or the straw purchasing of firearms many times individuals will provide false information on the ATF Form 4473 in an attempt to conceal their true identities and/or provide false addresses to law enforcement are unable to locate them.  The requested subscriber information is likely and probable to yield evidence about who

5

WILLIAMS is trafficking and/or providing firearms to. Furthermore, the requested information will help law enforcement to locate WILLIAMS.

## TECHNICAL TERMS

21.     In my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET NUMBER's user or users and may assist in the identification of co-conspirators and/or victims.

22.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-

6

911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

23. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the devices used by the TARGET NUMBER, including by initiating a signal to determine the location of the device used by the TARGET NUMBER on T-Mobile's network or with such other reference points as may be reasonably available.

24. Based on my training and experience, I know that T-Mobile can collect cell-site data about the devices used by the TARGET NUMBER. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the

7

customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

25.    Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

26.    Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication

8

service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET NUMBER's user or users and may assist in the identification of co-conspirators and/or victims.

27. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individuals communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

28. To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to nearby cellular devices, including the devices associated with the TARGET NUMBER, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers. The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others. Law enforcement will use this investigative device when they have reason to believe that WILLIAMS is present. Because there is probable cause to determine the identity of the

TARGET device, there is probable cause to use the investigative technique described by the warrant to determine the identity of the TARGET device.

29. The investigative device may interrupt cellular service of cellular devices within its immediate vicinity. Any service disruption will be brief and temporary, and all operations will attempt to limit the interference of cellular devices. Once law enforcement has identified the TARGET device, it will delete all information concerning non-targeted cellular devices. Absent further order of court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the TARGET device from all other devices.

30. The Buruea of Alcohol, Tobacco, Firearms, and Explosives (ATF), The United States Secret Service (USSS), and other authorized law enforcement officials, may employ electronic investigative techniques to capture and analyze signals emitted by any and all cellular telephones used by the TARGET for a period of 60 days. Officials of the USSS and other authorized law enforcement officials (a) must make reasonable efforts to minimize the capture of signals emitted from cellular telephones used by people other than the TARGET, (b) must immediately destroy all data other than the data identifying the cellular telephones used by the TARGET (such destruction must occur within forty-eight (48) hours after the data is captured), and (c) are prohibited from using the data acquired beyond that necessary to determine the cellular telephones used by the TARGETS.

10

## AUTHORIZATION REQUEST

31.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap device to record, decode, and/or capture certain information in Attachment A for each communication to or from the device used by the TARGET NUMBER, without geographic limit, for a period of sixty (60) days pursuant to 18 U.S.C. § 3123(c)(1).

32.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET NUMBER would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is

11

reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

33.     I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the device used by the TARGET NUMBER on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

34.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the device used by the TARGET NUMBER outside of daytime hours.

35.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation, of which the exact nature is neither public nor known to the target of the investigation. Accordingly, there is

12

good cause to seal these documents because their premature disclosure may seriously jeopardize this aspect of the investigation.

## CONCLUSION

36.     Based on the above information, I respectfully submit there is probable cause to believe that the location of WILLIAMS, who has been alleged to have violated Title 18, United States Code, Section 924(a)(1)(A), false statements to a federally licensed firearm dealer, may be located in devices which use the TARGET NUMBER, as fully described in Attachment A, which is incorporated herein by reference.

37.     Based on the foregoing, I respectfully request that the Court issue a search warrant authorizing the search of the items described in Attachment A, and the search and seizure of the items listed in Attachment B, which is incorporated herein by reference.

Further your affiant sayeth not.

13

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone(s) assigned call number **262-734-4812, (**the "TARGET NUMBER"), whose wireless service provider is T-Mobile, a company headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2. This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that the TARGET are present.

3. Records and information associated with the TARGET NUMBER that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone(s) and/or device(s) if it is subsequently assigned a different call number.

# ATTACHMENT B

## ITEMS TO BE SEIZED AND SEARCHED

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of T-Mobile, including any information that has been deleted but is still available to T-Mobile or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), T-Mobile is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following information about the customers or subscribers associated with the TARGET NUMBER for the time period of January 1, 2021 to the the present:

    i. Names (including subscriber names, user names, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the TARGET NUMBER, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

b. All information about the location (historical) of the TARGET NUMBER described in Attachment A from January 1, 2021 to the present. "Information about the location (historical) of the TARGET NUMBER" includes all available E-911 and/or Phase II data, GPS data, latitude-longitude data, per-call measurement data (PCMD), and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. This information would also include SMS, and data transmission, and access through any means reasonably available to all location based services with respect to the Target Phone which includes but is not limited to, enhanced 911, RTT / Per Call Measurement Data (PCMD) /

2

NELOS / LOCDBOR / TrueCall or Timing Advance reports for the duration of the order, and a listing of all cell sites and control channels and the physical address of each cell site for the areas in which the Target Phone is operating.

c. All information about the location (prospective) of the TARGET NUMBER described in Attachment A for a period of sixty (60) days, during all times of day and night. "Information about the location (prospective) of the TARGET NUMBER" includes all available E-911 and/or Phase II data, GPS data, latitude-longitude data, per-call measurement data (PCMD), and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

d. All call information obtained from a pen trap and trace device to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cellular phones described in Attachment A. Pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for 60 days from the date of this warrant. This includes: Information associated with each communication to and from the TARGET NUMBER for a period of 60 days from the date of this warrant, including:

 i. Cell site (i.e., tower and face data) for surveillance data;

 ii. The date, time, and duration of the communication;

3

iii. IP addresses associated with the cell phone device or devices used to send or receive electronic communication;

iv. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the TARGET NUMBER described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

v. IP addresses of any websites or other servers to which the TARGET NUMBER connected;

vi. Source and destination telephone numbers and email addresses;

vii. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the devices using the TARGET NUMBER on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

4

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that will assist in locating WILLIAMS, who is being investigated for violating Title 18, United States Code, Section 924(a)(1)(A).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

This warrant authorizes the law enforcement personnel described above to determine the location of the cellular device(s) described in Attachment A by collecting and examining:

1. Radio signals emitted by the target cellular device(s) for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. Radio signals emitted by the target cellular device(s) in response to radio signals sent to the cellular device by the officers;

for a period of sixty (60) days, during all times of day and night.

5

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

6

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by T-Mobile, and my official title is _____. I am a custodian of records for T-Mobile. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of T-Mobile, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.     such records were kept in the ordinary course of a regularly conducted business activity of T-Mobile; and

c.     such records were made by T-Mobile as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
Date                                               Signature

2